JOE GARRETT v. THE STATE.

*No. 916.  Decided June 24th, 1896.*

1. **Assault With Intent to Murder—Manslaughter—Insulting Conduct Towards a Female Relative—Charge.**

On a trial for assault with intent to murder, where the defense was, insulting conduct towards a female relative; where the court, in effect, charged the jury, that such defense would not be available unless the female relative was herself insulted by such acts and conduct. Held: Error; that while the language of the statute is, that the insult must be towards the female relative, it does not mean that the female relative must herself be affronted by the conduct.

**2. Same—Aggravated Assault—Mistake of Fact.**

On a trial for assault with intent to murder, where it appeared that defendant came upon the prosecutor and his, defendant's, sister in a dark room about 12 o'clock at night, and he fired upon and wounded the prosecutor. Held: He was entitled to a clear and emphatic charge to the effect, that, if, at the time, he reasonably believed the prosecutor and his sister were engaged in an act of illicit intercourse, or were about to engage in such act, and that his passion became aroused, on said account, to such an extent as that he was incapable of cool reflection, and he then shot the prosecutor, he would be guilty of an aggravated assault. The question of a mistake of fact, does not arise in such case.

APPEAL from the District Court of Smith. Tried below before Hon. FELIX J. McCORD.

This appeal is from a conviction for assault with intent to murder, the punishment being assessed at two years' imprisonment in the penitentiary.

The opinion states the case.

*Cone Johnson,* for appellant, as to adequate cause, cited Lewis v. State, 18 Tex. Crim. App., 116; Wadlington v. State, 19 Tex. Crim. App., 266; Howard v. State, 23 Tex. Crim. App., 280; Orman v. State, 24 Tex. Crim. App., 503.

As to mistake of fact, Jones v. State, 33 Tex. Crim. Rep., 496.

*Mann Trice,* Assistant Attorney-General, for the State.

[No brief found with the record.—Reporter.]

HENDERSON, JUDGE.—Appellant was convicted of an assault with intent to murder, and given two years in the penitentiary, and prosecutes this appeal. Appellant relied upon two theories in the case. One theory claiming a mitigation or reduction of the offense from an assault with intent to murder to an aggravated assault, on the the ground that the defendant acted, in the matter of shooting the prosecutor, on account of alleged insulting conduct towards Mrs. Patterson, the sister of the defendant. The other ground was self-defense. No complaint was made as to the charge on that subject, and so it is not necessary to discuss the case with reference to that matter. In reference to the theory of defense, on which he insisted that he should not have been convicted of a greater offense than aggravated assault, we will give a short resume of the substance of the testimony, and then examine the charge of the court on this subject: Mrs. Patterson was the widowed sister of the defendant. The former wife of the prosecutor was also a sister of the defendant. The prosecutor had been boarding with Mrs. Patterson, and had for some time been paying her marked attention, and the record indicates that their conduct gave rise to some talk. A short while before the difficulty, the prosecutor met the defendant, and had a talk with him on the subject, in which he told the defendant what Mrs. Hutcheson had said about the relations of the prosecutor and Mrs. Patterson; and he also told him that he thought Mortimer Garrett, a brother of the defendant, had got Mrs. Hutcheson to come up in order to break up the match between him and Mrs. Patterson, and that he believed that Mortimer

and Mrs. Hutcheson "had it in for him." The defendant advised the prosecutor that he ought to move from Mrs. Patterson's. The prosecutor did move from Mrs. Patterson's boarding house in about a week thereafter. In two or three months after that the prosecutor, Mugford, resumed his visits to Mrs. Patterson's which were usually after his work was done, about 10 o'clock at night. The evidence shows, that about three weeks before the difficulty the prosecutor, Mugford, and Mrs. Patterson became engaged, and that at the time of the shooting they were to have been married within five days. Such engagement, however, was a secret between themselves. The records shows: That, on the night before the difficulty, Mortimer Garrett, who lived at Mrs. Patterson's, went home about midnight. That he went into his sister's room, which adjoined the parlor. That directly the light in the parlor was put out, and he heard parties in the parlor talking. They remained there without a light for about fifteen or twenty minutes, and then Mugford went out the front door, and his sister came out of the room. Mortimer told the defendant of this occurrence the next day. On the night of the difficulty, Mugford came to Mrs. Patterson's, passed some one on the porch, walked in the house and in the parlor, and was there fifteen or twenty minutes, when Mrs. Patterson came in, and stayed there until about 12 o'clock. That when he started to leave he assisted Mrs. Patterson in putting out the lights in the house. She put the light out in the parlor, and then went in the dining room, which adjoined the parlor, put that light out, and left the light in the hall burning, and then went back in the kitchen, in the rear of the house, to put out the lights there, the prosecutor accompanying her. When they got in the kitchen the prosecutor put down the window. Mrs. Patterson came in, and partly closed the kitchen door. Then the prosecutor put his arms around her shoulders, and kissed her. While they were standing there, in the kitchen, the defendant pushed the kitchen door open, and stepped in the door, and said, "Mugford, hands up!" or "Hands up, Mugford!" and then began shooting at him. The prosecutor was so frightened that he was rendered powerless. Appellant shot four times; two of the shots striking the prosecutor, and inflicting upon him serious injuries. The prosecutor ran by the defendant out into the yard. As he ran out the door, some one hit him over the head. At the time he saw Mortimer Garrett right by the door, but was unable to say whether it was he that struck him or not. This was the account given of the difficulty by the prosecutor. Mortimer Garrett, the only other witness in the case, testified that at the time of the difficulty he "had just reached home from town, and heard a noise in the kitchen; went there, and saw Joe Garrett, who came in at the side door, close to the kitchen, step to the door, push it open, and step in. As he did so he said, 'Mugford.' As he said this, Mugford made towards him. Defendant pulled his pistol, and said, 'Stop!' and, I think, said, 'Throw your hands up!' and began firing. By the time he had fired twice, Mugford had got up to him and got hold of him, and defendant fired twice after the prosecutor got hold of

him. Mugford's clothes were set on fire. The defendant did not have his pistol out when he stepped in the door. Mrs. Patterson was in the kitchen while the shooting was going on, and, as soon as the defendant ceased firing, Mugford ran out the door and passed the defendant." The court gave an elaborate charge on the phase of the case involving insulting conduct of the prosecutor toward Mrs. Patterson, the sister of the defendant. While no exceptions were taken to the charge, yet certain features thereof are assigned as error. Among other things, it is insisted that one paragraph of said charge was calculated to mislead the jury, in inducing them to believe that the conduct of the prosecutor must have been insulting to Mrs. Patterson. The charge objected to is in these words, to-wit: "If, however, the conduct of said Mugford was not in itself insulting to Mrs. Patterson, or coupled with what defendant had heard recently, or such .as would raise in the mind of an ordinarily prudent person a degree of anger, rage, sudden resentment, or terror, and was not such conduct in itself, and what he had heard, as created in defendant's mind the belief that Mugford's conduct was insulting to Mrs. Patterson, then such shooting would not. be a voluntary shooting under the influence of sudden passion arising from an adequate cause." That portion of the charge above quoted, it appears to us, bears the construction contended for by the appellant; that is, before the conduct of the defendant could be considered as affording adequate cause to reduce the assault to an aggravated assault, they must believe that Mrs. Patterson was insulted thereby. There is certainly no evidence in the record in this case that indicates that the conduct of the prosecutor, whether it was merely such as could probably transpire between lovers, or was of an illicit character, afforded her any personal grievance. It is true that the language of the statute is that the insult must be towards a female relative, but we do not take it that this means that the female relative must herself be affronted by the conduct. If the conduct is towards her, and it is calculated reasonably to impress the male relative interfering that it is of such character as showed an illicit intercourse, though it may not be objectionable to the female, such outrageous conduct (for instance, to the daughter or sister of the male relative), may convey and create a grave and serious insult; and for the court to indicate by its charge that Mrs. Patterson should be insulted, before adequate cause existed in favor of the defendant, under the circumstances of this case, was calculated to mislead the jury. The defendant was entitled to a clear and emphatic charge on the subject to the effect that if the defendant at the time reasonably believed that the prosecutor and his sister were engaged in .an act of illicit intercourse, or were about to engage in such act, and that his passion became aroused, on said account, to such an extent that he was incapable of cool reflection, and he then shot him, he would be guilty of an aggravated assault. See, Lewis *v.* State, 18 Tex. Crim. App., 116. The court also gave an extended charge with reference to a mistake of fact, presumably under Art. 47, Penal Code. This, no doubt, .was intended to cover the phase of the case which indicated that the

prosecutor and Mrs. Patterson were engaged, and that at the time he was shot he was merely caressing his fiancee, which, as an engaged person, he had a perfect right to do.   The facts showed that this relationship between the parties was unknown to the defendant.   The only fact about which the defendant could have been mistaken was as to what the parties were doing when he opened the kitchen door.   If he then reasonably believed that the parties were engaged in an act of sexual intercourse, or about to engage in the same, and this cause excited his passion so that he was incapable of cool reflection, the offense would have been reduced to an aggravated assault.   If the parties were merely engaged in an innocent pastime, such as might honorably transpire between engaged persons, and he reasonably believed the parties were engaged, then there would be no reduction in the grade of the offense.   We think it would have been better had the court, instead of giving an abstract charge on mistake of fact, given one predicated directly upon the facts of the case. It is not necessary to discuss other questions raised in this case.   For the errors above indicated the judgment is reversed, and the cause remanded.

*Reversed and Remanded.*