MAX CHILDRESS V. THE STATE.

No. 6880.    Decided May 3, 1922.

Rehearing Granted, May 31, 1922.

1.—Theft—Bills of Exception—Filing.

Where the bills of exception were not properly filed, they cannot be considered on appeal; however, where it was made to appear that they in fact bore the file mark of the clerk, the case is heard upon its merits.

2.—Same—Ownership—Husband and Wife—Indictment.

In theft cases, ownership of the separate property of the wife may be alleged to be in either the husband or the wife, and where ownership was alleged in the wife, there was no reversible error.

3.—Same—Evidence—Arrest—Declaration by the Defendant.

Where the bill of exceptions did not make it clear that there was only one conversation, and it being left in doubt, the court's qualification will control and this court must presume that the ruling of the court below in admitting the testimony was correct, holding that a second conversation where defendant was not under arrest, was admissible.

4.—Same—Market Value—Charge of Court—Rule Stated.

Value as it relates to stolen property is the market value of the thing at the time and place of the taking, if it had a market value, and if not the value would be the amount it would cost to replace it, and testimony as to what it cost etc., was therefore admissible.

5.—Same—Bills of Exception—Questions and Answers.

Where the bills of exception were in question and answer form same cannot be considered on appeal. Following Jetty v. State, 90 Texas Crim. Rep., 346 and other cases.

6.—Same—Evidence—Intimate Relations of Witness and Defendant.

In view of the issues raised by the defendant, and his witnesses, the trial court was in error in excluding from the jury any evidence which would have shown intimate relations between the prosecuting witness and the defendant, the rule would be otherwise if the witness simply occupied the relation of an ordinary witness, but defendant's contention is that it was by reason of these very intimate relations that he secured the alleged stolen property with her consent, the same was admissible. Following Eppison v. State, 83 Texas Crim. Rep., 364.

7.—Same—General Reputation—Rule Stated.

Where defendant had in no way put his reputation in issue, but on cross-examination of State's witness district attorney propounded the question whether the witness knew defendant's reputation as a law-abiding citizen, the same was reversible error.

Appeal from the District Court of Orange. Tried below before the Honorable V. H. Stark.

Appeal from a conviction of felony theft; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Howth & O'Fiel,* for appellant.—On question of value: Close v. State, 117 S. W. Rep., 137; Floyd v. State, 117 id., 138; Keipp v. State, 103 S. W. Rep., 392.

On question of general reputation: Maxwell v. State, 78 S. W. Rep., 516; Hinton v. State, 144 id., 117.

*R. G. Storey,* Assistant Attorney General, for the State.

HAWKINS, Judge.—Conviction is for felony theft, punishment being assessed at two years confinement in the penitentiary.

Our Assistant Attorney General calls attention to the fact that none of the bills of exception appear from the record to have been filed in the lower court. They are approved by the trial judge, but without the record shows the filing in the court below they cannot be considered. Oliver v. State, 58 Texas Crim. Rep., 50, 124 S. W. Rep., 637.

We have examined the statement of facts, and find the evidence sufficient to support the verdict. It being purely a fact case as the record now appears we deem it unnecessary to set out the evidence.

The judgment of the trial court must be affirmed.

*Affirmed.*

ON REHEARING.

May 31, 1922.

HAWKINS, Judge.—An opinion affirming the judgment was delivered May 3d. The bills of exception were not considered because the record failed to show that any of them had ever been filed in the court below. It is now made to appear that the bills of exception in fact bear the file mark of the clerk, and that the same were filed in ample time to receive our consideration, but by inadvertence the transcript failed to show their filing. In connection with the motion for rehearing the bills will now receive our attention.

Appellant was convicted under the second count in the indictment charging him with theft of a grafanola. It is alleged in said count that the same was the personal property of Ruth Lyles, and that it was taken from her possession. The evidence disclosed that Ruth Lyles was a married woman; that her husband was working in Louisiana, but would spend two or three nights at home each week; they sustain the relation of husband and wife. It is claimed that ownership and possession should have been alleged in him. It is shown

by the evidence that the grafanola in question was the separate property of the wife, it having been purchased by her before her marriage with money given her by another party. In theft cases ownership of the separate property of the wife may be alleged to be in either the husband or the wife. Coombes v. State, 17 Texas Crim. App., 239; Kaufman v. State, 53 Texas Crim. Rep., 209; Smith v. State, 53 Texas Crim. Rep., 643. The court, therefore, properly refused the special charge for a peremptory instruction to return a verdict of not guilty because the ownership of the property was alleged to be in Ruth Lyles, instead of J. R. Lyles.

It is made to appear, (bills of exception 1 and 19) that while the sheriff was testifying he was asked if appellant had not told him that he had bought the grafanola in question from one Posey. The evidence was excluded because it appeared from the sheriff's testimony that appellant was practically under arrest at the time. While appellant was upon the witness stand the district attorney asked him if he had not told the sheriff that he bought the instrument from Posey, and upon objection the answer at first was excluded. The district attorney then changed the question and asked if he had not so told the sheriff before he was ever placed under arrest. The court permitted him to answer and he admitted that he had so told the sheriff. It is contended by appellant that only one conversation relative to the matter occurred between appellant and the sheriff, and that appellant was in fact under arrest at the time he made the statement the admission of which was complained of. The bills of exception do not make it clear that there was only one conversation, and it being left in doubt by them, the court's qualification will control and we must presume the ruling of the court in admitting the testimony was correct.

Appellant requested the court to instruct the jury to return a verdict of not guilty because there was no legal evidence in the record to show the market value of the alleged stolen property. This the court declined to do and the same is brought forward as error. Mrs. Lyles testified that a second-hand grafanola had no market value in the town of Orange where the theft is alleged to have occurred. The record is otherwise silent upon this point. She testified that she purchased the grafanola in April 1919, and paid for it the sum of $120; that she had been offered for it the sum of $75. Objection was urged to her testimony as to what she paid for it, and what she had been offered as not being the way to prove market value. "Value" as it relates to stolen property is the market value of the same at the time and place of the taking, if it had a market value, and if not the value would be the amount it would cost to replace it. (Cunningham v. State, 90 Texas Crim. Rep., 500; and cases therein cited.) The record showing it had no market value the testimony of the witness as to what she had paid for the same and what she had been offered for it would be pertinent to enable the jury to determine its real value or what it

would cost to replace it. The question discussed is presented in bills of exception 4, 10 and 11, and show no error.

Bills of exception 3, 5, 6, 7, 8, 9, 13 and 16 as qualified and explained by the trial judge present no error. Bill number 20 consists of thirty-three questions and answers. We have frequently heretofore condemned bills in this form. See Carter v. State, 90 Texas Crim. Rep., 248, 234 S. W. Rep., 535; Jetty v. State, 90 Texas Crim. Rep., 346, 235 S. W. Rep., 689; Rylee v. State, 90 Texas Crim. Rep., 482, 236 S. W. Rep., 744; McDaniel v. State, 90 Texas Crim. Rep., 636, 237 S. W. Rep., 292; Watson v. State, 90 Texas Crim. Rep., 576, 237 S. W. Rep., 298; Cottrell v. State, 91 Texas Crim. Rep., 131, 237 S. W. Rep., 928.

On the night of the alleged theft Mrs. Lyles and her sister left their house about seven o'clock to attend a circus. Upon returning they discovered the grafanola was missing. Mrs. Lyles made complaint to the officers expressing her suspicions of appellant, and the officers visited his house that night but failed to find the instrument there. She explains that her suspicions were aroused towards appellant because as she and her sister were leaving the house she saw him and one John Miller in a car near there. Appellant was a service car driver and Mrs. Lyles had frequently called upon him to take her to places in his car. She denied that any relations existed between them other than that as a chauffeur he was driving her for pay; that she used his car two or three times a week, telephoning him whenever she desired him to come to the house for her. She denied that he had ever spent the night with her at any time. Her sister, who occupied a portion of the same house with Mrs. Lyles, did not support her in all respects with reference to her attitude towards appellant. Her sister testified that they seemed to be on very friendly terms; that appellant was a frequent visitor at the house, both day and night; that he would sometimes call at the house in his car and Mrs. Lyles would go out and talk to him, and at other times he would come in the house and stay there an hour or two visiting with her sister; that she did not know how long he would remain at night always as sometimes her sister would be in her part of the house and witness in the other. Appellant claimed and testified that he was on unusually friendly terms with Mrs. Lyles; was a frequent visitor at her house and always had access to her room with her consent; both day and night; that on the day before the alleged theft she had asked him for sixty-five dollars; that he had told her he did not have the money, and she had requested him to try and get it from some one and pawn the grafanola for the purpose; that on the night before the alleged theft he had taken Mrs. Lyles in his car to see a friend of his, one Dr. Scarbrough, and talked to the latter about advancing the money, Mrs. Lyles being present at the time; that Scarbrough did not at that time agree to let him have the money, but told him he would let him

know the next day; that on the next day Scarbrough did tell him he would let him have fifty-five dollars on the grafanola and that appellant himself advanced ten dollars of his own money and turned the sixty-five dollars over to Mrs. Lyles. He said that Mrs. Lyles did not want her sister to know that she had mortgaged or pawned the grafanola, and had told him she would get her sister away from the house to the show and for him to get the grafanola while they were away, which he did. Appellant proved by Dr. Scarbrough that appellant, together with a lady whom appellant introduced as Mrs. Lyles, did come to him and seek an advance of sixty-five dollars on the grafanola; that witness did not know Mrs. Lyles and would not have been able to recognize her as it was dark, but that the next day appellant pointed out to him on the street Mrs. Lyles as the lady who was with him (appellant) the night before. It was proved by J. B. Childress (the father of appellant) with whom Dr. Scarbrough boarded at the time, that he had some ninety dollars of Scarbrough's money, and that at the request of Scarbrough he had turned over to appellant fifty-five dollars thereof. Appellant also showed by two witnesses that some thirty days after the loan he paid back to Dr. Scarbrough the fifty-five dollars which had been advanced by the latter. Appellant claims that after having paid from his own funds the money back to Scarbrough he had the grafanola moved to his (appellant's) house where it was subsequently found. Appellant admitted upon the witness stand that he had told a number of parties he knew nothing about the grafanola or who had gotten it, that he did this because Mrs. Lyles had requested him to so report in order that her sister might not know what had become of the instrument. Mrs. Lyles denied all of these matters asserted by appellant, and the evidence upon these issues is extremely contradictory. Appellant claims that he mortgaged the grafanola to Dr. Scarbrough at the request of both Mrs. Lyles and her husband. Mr. Lyles was not used as a witness upon the trial and his absence is not accounted for. Appellant explains the reason he told the officers he had bought the grafanola from Posey was also at the suggestion of Mrs. Lyles herself; that Posey had been staying with her and she had said if anything was said about it they would lay it on Posey because he was not giving her enough money and she had fallen out with him. This statement was also denied by Mrs. Lyles. Upon this state of the record appellant offered to prove by a witness by the name of Elain that he was acquainted with both appellant and Mrs. Lyles and knew the relationship existing between them and knew the same to be of an intimate sexual character. He also offered to prove by a hotel keeper that about the time of the alleged theft appellant and Mrs. Lyles had occupied a room at his hotel together and had been ejected therefrom by him. This testimony was excluded by the court upon the theory that it was an attempt to impeach the witness Mrs. Lyles by showing her immoral character, and by specific

acts of immoral conduct. If it was offered upon this issue alone there is no question but that the court would be correct in not admitting it. Appellant, however, sought to introduce it, not for the purpose of impeaching Mrs. Lyles, but insisted that the jury had a right to know what the actual relations existing between the two were upon the theory that if such intimate relations did exist it would tend to support appellant's story that he had not stolen the grafanola as was claimed by Mrs. Lyles, but had in good faith and at her instance taken the grafanola from her house and pawned it in order to raise money for her benefit. If the theory of appellant be accepted as true the conduct of Mrs. Lyles in reporting the loss of the grafanola to the officers would be consistent with the story told by appellant that she was seeking to conceal from her sister the fact that she had mortgaged it, and would also explain appellant's conduct in denying knowledge of the disappearance of the grafanola from her house and his statement about having purchased the same from Posey. If it would tend to support his statement that he was attempting throughout the transaction to protect her and conceal from her sister the facts incident to the disappearance of the instrument it should be admitted. We are inclined to believe that in view of the issues raised by appellant and his witnesses the court was in error in excluding from the jury any evidence which would have shown intimate relations existing between appellant and Mrs. Lyles. Proof that the relation existing between them was criminally intimate would of course not be admissible if she simply occupied the relation of an ordinary witness because her veracity could not be questioned or impeached by any such proof, but such is not the condition. Appellant's contention is that it was by reason of these very intimate relations that she had appealed to him for money, and had suggested the manner of securing it and how the grafanola should be removed in the absence of herself and sister. To our minds it appears to throw light upon the whole transaction. The rejected testimony should have been admitted. Eppison v. State, 82 Texas Crim. Rep., 364. The jury may or may not have believed the evidence tendered by appellant upon the issue in question, but the testimony throughout upon the material issues is so contradictory we believe the jury was entitled to receive and weigh this testimony in connection with all the other facts in evidence.

Appellant had in no way put his reputation in issue. Upon cross-examination of the witness Elam the district attorney propounded this question:

"Do you know defendant's reputation here as to whether he is a law-abiding citizen, or otherwise?"

Appellant objected to the question and same was sustained by the court. Counsel for appellant requested the court in the presence of the jury to instruct the jury to disregard the question and further to instruct them that the question was improper, but this the court re-

fused to do.  The learned trial judge qualifies the bill by stating that appellant did not submit any special charge to the court instructing the jury to disregard the question.  It is our opinion that the question was such a gross violation of all rules of procedure that it should not be necessary for appellant to request the court to instruct the jury that is was improper and to disregard the same.  The court should have done so of his own motion, and should have promptly reprimanded the district attorney for asking such a question.  There is no better known rule than that the reputation of the defendant can not be inquired into by the State unless the accused himself opens up the way, and for the district attorney to propound such a question, thereby forcing the accused in the presence of the jury to interpose an objection, called for prompt action on the part of the court.  As long as the law presumes an accused to be innocent attorneys for the State ought not inject into the trial a matter which every well informed lawyer knows is improper.  Common justice to a party accused of crime suggests that he should be treated fairly upon his trial, and such proceedings as were here resorted to will not be tolerated or approved.  Ordinarily when the court promptly sustains an objection to a question, and the facts indicate that it was asked in good faith no error is presented unless the question is of such nature as to be extremely hurtful.  Overstreet v. State, 36 Texas Crim. Rep., 233, 150 S. W. Rep., 899, and cases therein cited.

We frequently decline to reverse cases where improper questions were asked and objections were promptly sustained: but we can scarcely conceive a question which in and of itself could be more hurtful to an accused than one calling for an answer which would put in issue his general reputation.  It places him in the unfortunate attitude of having to let the question pass unchallenged, thereby permitting the State to do what it plainly has no right to do, or of objecting thereto in the presence of the jury, leaving the very natural impression upon them that he feared an answer which would have been detrimental to him.

The motion for rehearing is granted; the judgment of affirmance heretofore rendered will be set aside, and the judgment of the trial court will be reversed and the cause remanded.

*Reversed and remanded.*