## D. C. DAY V. THE STATE.

No. 13804. Delivered January 21, 1931.

The opinion states the case.

*P. W. Seward,* of Fort Worth, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Conviction for transporting intoxicating liquor; punishment assessed at five years in the penitentiary.

The evidence shows that on September 19th, 1928, one Ed Lawrence, policeman in the town of Mineral Wells, saw the appellant and a woman driving a car. The first thing that attracted his attention to said car was the fact that the car was moving very slowly, that he slowed down the car that he was driving and followed them for about a block; that he stopped at a filling station and allowed them to pass him. He then drove behind them for about four blocks and then stopped them,

walked up to the car and began talking to them and saw that they were a little out of line; that he saw an empty bottle on the seat just behind them and went around and raised the turtle back and found in said car 21 bottles of Horton's Dry Gin; that they were short quarts, between a pint and a quart; that he tasted of this gin and it was intoxicating liquor, and that the three bottles shown him in court were some of the gin that he found in appellant's car. The sheriff of Palo Pinto County testified that there were twenty-one bottles of gin turned over to him and that the liquor shown him in court was part of that turned over to him and that said gin was intoxicating liquor. The arresting officer also testified that both the appellant and the woman with him were intoxicated at the time of the arrest; that he found on appellant when he searched him between three and four hundred dollars in money and several checks for various amounts; that there was one check for $36.00. It was also shown by the evidence that the woman was driving the car.

The only evidence offered by the appellant was to the effect that the woman driving the car, while she had been the wife of the appellant, had been divorced from him for several months prior to the trial. Appellant did not take the stand as a witness, nor did he by any evidence place in issue his general reputation for being a peaceful or law-abiding citizen.

By appellant's bill of exception No. 10 he complains of the action of the district attorney in asking the witness, Judge Seward, while he was testifying for appellant and after he had testified that he had known the appellant about a year prior to his arrest in this case and who at the time was one of the attorneys for appellant herein, the following question: "How many times have you defended this man (meaning appellant)?" This question was objected to by appellant at the time for the reason that the same was an effort to prejudice the rights of the appellant, to put his character in issue at a time when he had not taken the witness stand or raised the question of his character or reputation, and further that same was highly inflammatory and prejudicial to the rights of the appellant herein and because said question conveyed to the jury an assumption by the district attorney that the appellant had been guilty of other and separate offenses. The court sustained said objection.

Appellant's bill of exception No. 11 excepted to the action of the district attorney in asking the same witness while on the stand the following question: "Judge Seward, just tell the jury whether or not you were present in Ft. Worth when this defendant's house was padlocked." To which the appellant then and there objected, through his other counsel, Mr. Arrington, to the propounding of said question as being prejudicial and further for the reason that said question was an assumption on the part of the district attorney that the appellant had been guilty of another offense of a similar nature. The court sustained said objection

and instructed the jury that they would not consider the question asked for any purpose whatever.

In appellant's amended motion for a new trial the question was raised, supported by affidavit, that the jury was guilty of gross misconduct in that, among other things, it had considered the questions propounded to appellant's witness, Seward, by the district attorney as to whether or not he was present when appellant's house in Ft. Worth was padlocked and how many times he had defended the appellant. The trial court heard evidence of the jurors on the issue of misconduct and their testimony showed, according to the record, that on the first ballot they stood eight for conviction and four for acquittal. It is shown that after the first ballot there were statements made by members of the jury as to the excluded questions of the district attorney to the witness Seward and that the second ballot resulted in nine for conviction and three for acquittal, and that thereafter they all agreed to a verdict of guilty and to assess appellant's punishment at five years in the penitentiary. There was also evidence from jurors that the appellant was referred to in the jury room as "a King Bootlegger" and "King of Bootleggers", and also the fact that the appellant had not testified and that he did not offer any testimony was mentioned and discussed in the jury room by some of its members. Without further discussion, it is thought that misconduct of the jury is shown, which also emphasizes the prejudicial error involved in the conduct of the district attorney as presented in bills of exception, Nos. 10 and 11.

In the case of Childress v. State, 92 Texas Crim. Rep., 215, 241 S. W., 1029, 1032, where the record showed that the appellant in that case had not put his reputation in issue and where the district attorney on cross examination of a witness propounded this question, "Do you know defendant's reputation here as to whether he is a law abiding citizen, or otherwise," Judge Hawkins speaking for the court in part said: "There is no better known rule than that the reputation of the defendant can not be inquired into by the State unless the accused himself opens up the way, and for the district attorney to propound such a question, thereby forcing the accused in the presence of the jury to interpose an objection, called for prompt action on the part of the court. * * * Common justice to a party accused of crime suggests that he should be treated fairly upon his trial, and such proceedings as were here resorted to will not be tolerated or approved. Ordinarily when the court promptly sustains an objection to a question, and the facts indicate that it was asked in good faith no error is presented unless the question is of such nature as to be extremely hurtful." He cites the case of Overstreet v. State, 68 Texas Crim. Rep., 238, 150 S. W., 899, and cases cited therein in support thereof.

While this opinion has been cited and quoted from in subsequent

cases, owing to the importance of the holding as a rule for the guidance and the observance in the trial of cases where the defendant has not put his reputation in issue, we deem it proper, if not necessary, to again quote from it in this case, as has been done. This case has been followed and approved by this court in the case of Hunter v. State, 113 Texas Crim. Rep., 90, 18 S. W. (2d) 1084.

Such being the rule of law in this State, can it be said under the record in this case that the questions asked by the district attorney were not extremely hurtful and prejudicial to the rights of the appellant where they were persisted in by the district attorney after the court had ruled that the reputation of the defendant could not be gone into (he not having put his reputation in issue), by again asking the question of the same witness along the same line, and again forcing appellant in the presence of the jury to object to the same character of question, and where it is shown by the record that some, if not all, of the jurors in their deliberations before arriving at a verdict mentioned or discussed the excluded questions asked by the district attorney and after said discussion, fixed the appellant's punishment at the maximum penalty?

We think the action of the district attorney complained of was hurtful and prejudicial to the rights of the appellant under the law and calls for a reversal of this case.

Reversed and remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.