### C. W. MUSSLEWHITE V. THE STATE.

No. 20569. Delivered November 8, 1939.

The opinion states the case.

*Hughes & Monroe, Eddie Roark,* and *Currie McCutcheon,* all of Dallas, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

The appellant was convicted of an unlawful killing, murder with malice, and by the jury given a ten year sentence.

The facts reveal that appellant was a bartender in the Club Buffet in Dallas, where beer and other things were sold, the owners of this buffet being Arley Watkins and one Kincaid. On Wednesday. prior to Saturday April 23, 1938, the deceased and two companions were in such buffet about one o'clock A. M. drinking beer. There arose some question as to whether they had paid for a package of Fritos. The deceased and his companions became rather boisterous, and eventually the appellant, who was at that time off duty, but who had made the sale when on duty, paid for the package of Fritos that was in dispute. At about that time the deceased's companions engaged in some language that was offensive to one of the patrons by the name of Hogue, who remonstrated with them, suggesting that there were some ladies present, and one of them might be Hogue's wife. This conversation finally resulted in an invitation by deceased to Mr. Hogue to come outside and fin-

ish the argument, which invitation was accepted, but neither party ever went outside. During the altercation the proprietor Watkins offered Hogue a blackjack, which Hogue refused. Finally the proprietor of the buffet requested the deceased and his companions to leave the house, which they did not immediately do, but when the deceased and his companions started out of the buffet they passed a man by the name of Baker, who had not appeared in the controversy prior to that time, and deceased struck Baker, and passing by the cash register he knocked it around on the counter and disarranged it, at which time the proprietor of the place struck deceased over the head with a blackjack and cut and bruised his head and face therewith, the appellant assisting the proprietor, and the deceased was escorted out of the place by both appellant and the proprietor. On Saturday, after the above had happened on Wednesday, the deceased and some companions were again in the club buffet, and an assault was made on the man Watkins, the proprietor, who seemed to have been engaged in a fight with the deceased, the deceased getting the best of the trouble, whereupon Watkins began calling for help. Immediately a free for all fight took place,—bottles were thrown, brass knucks were probably used, and blackjacks were present. Undoubtedly the appellant, who was tending bar and behind it, was struck on the head, with some hard instrument, he claimed, by the deceased, and while behind the bar he produced a pistol, firing one shot through the front window glass, and one shot into the back of the deceased's head, from the results of such shot the deceased soon died. The deceased was nineteen years old, finely proportioned, and very muscular. The testimony is very conflicting, and rather confusing, but we think the above is as fair a summary thereof as can be made by us.

We are met at the outset of a consideration of this case in bill of exceptions No. 1 with a series of improper questions asked by private prosecutors of certain witnesses, to all of which questions objections were promptly made, and as promptly sustained by the careful trial judge, who not only told the jury to disregard the questions, but in many of the instances instructed the questioner not to further follow out such line of questioning. In disregard, however, of the court's ruling and admonition, oftentimes such questioning was continued, and the trial court was forced to again sustain an objection thereto, to give a similar instruction to the jury, and to further admonish the person questioning the witness.

In order to fully understand this matter it is necessary to set out the main features of the bill itself, as follows:

"Be It Remembered that upon the trial of the above styled and numbered cause the following proceedings were had, to-wit:

"That while the witness Arley Watkins (proprietor of the Club Buffet where the homicide occurred), was testifying in behalf of the defendant and after he had testified on direct examination that he had been assaulted by the deceased's companions at the time of the homicide, and after he had testified that the deceased, on Wednesday prior to the killing on Saturday, had entered his place of business and caused a disturbance and a fight, and after he had testified to other defensive matters tending to show the defendant shot in self-defense, the special prosecutor, to-wit, J. E. Newberry, Esq., in an endeavor to impeach him (Watkins) by proving that the Club Buffet, the place where the killing occurred and where the defendant Musslewhite was employed as a bartender, was a gambling house and that the defendant and the defendant's witnesses were gamblers, and in said attempt he asked the witness Watkins the following questions:

" 'Q. How long have you known Hogue (who was also a defense witness and who was present at the time of the homicide and testified to defensive facts) ? A. 7 or 8 years I imagine.

" 'Q. And he came down here from Tulsa with a man by the name of Baker (another defense witness who was present at the time of the homicide and who was a defense witness) ? A. I don't know that he came with Baker.

" 'Q. Well, you saw him a lot of times up at the Club Buffet? A. They were customers there, yes.

" 'Q. They were in there frequently? A. Well, now, like any other customer.

" 'Q. And Hogue and Baker dealt cards in that gambling house of yours in the Club Buffet there?

"At which juncture the defendant objected on the grounds that same was irrelevant, immaterial and prejudicial.

"The court again sustained the objection, and at the request of the defendant the court instructed the jury not to consider said question for any purpose and to disregard the asking of same.

"Immediately after the court had instructed the jury not to consider the asking of said question, the special prosecutor, J. E. Newberry, Esq., continued:

" 'Q. Did you run a gambling house?"

"And then again the defendant objected and the court once

more sustained the objection and instructed the special prosecutor, J. E. Newberry, Esq., then asked the witness Watkins about some other matters and then once again asked the witness Watkins, in defiance of the court's ruling, the following question:

"'Q. Did you know that very shortly after that killing the district attorney got an injunction against you as a nuisance, as a gambling house?'

"To the asking of said question the defendant again objected and the court sustained said objection and again instructed the jury not to consider same and again instructed the special prosecutor not to make any more references to anything about gambling and admonished counsel: 'I want you to abide by it.'

"That after asking the witness Watkins a few more questions he propounded the following question to the witness Watkins:

"'Q. How many women did you and Mr. Kincaid employ to go out to the various hotels and bring in suckers?'

"To which the defendant's counsel objected to going over the same line of questioning (that the court had already admonished counsel not to refer to), whereupon the court sustained the objection and again instructed the jury to disregard it, and defendant again objected and excepted to counsel for the State willfully disobeying the court's rulings, which objection was again sustained."

The trial court qualifies this bill by referring us to certain testimony of Major Marsh in the statement of facts, which testimony is as follows: "I presume that that place (Club Buffet) had an upstairs to it because the bartender pointed to the door when he asked us whether we would like to gamble." We are also referred to the testimony of the witness Hogue relative to this bill, but do not find anything therein further than that there was a balcony in the club buffet building.

From this line of questioning, as well as other and further matters appearing in the statement of facts, it can easily be gathered that the patrons of this buffet as well as the buffet itself was not of such a high moral atmosphere as to be very uplifting to either the young or the old, and was such a place that would naturally not be frequented by persons whose characters as law-abiding citizens were above reproach, nevertheless we do not think that such a condition would justify the private prosecutors in continuing to ask questions not justified by the law in the face of the ruling and admonition of the trial court. A proper respect for such trial court, and the high position he occupied, should have demanded from them obedience

to not only the substance but the letter of the law as evidenced by his rulings. The continued asking of such a line of questions could and did surely prejudice appellant's cause before the jury, and might have caused them to have discredited the testimony of these witnesses, which testimony was in some instances very material to his defense.

That the trial court thought such a line of questioning was improper is shown by his sustaining an objection thereto; that he thought same injurious is further shown by his effort to eradicate same from the minds of the jury by instructing them to disregard it. Then, in order to find the reason for the resuming of such questioning, we are driven to the conclusion that it could only have been to offer these prejudicial matters to the jury in spite of the court's ruling thereon. It seems to us that this matter evidences serious error. It was bound to have evidenced to the jury that the prosecutors thought that appellant and his employer, as well as many of his witnesses, were law violators in many and divers ways; some of them gamblers, gambling house keepers, liquor law violators, and disorderly house keepers, and that this very club buffet had been so disorderly as to have been closed by an injunction of the courts, no part of which, if true, was admissible under the trial court's ruling. We think the persistent efforts to place this testimony before the jury, after the trial court's adverse ruling thereon, surely prejudiced appellant's defense unfairly, and should result in a reversal herein. See Dailey v. State, 291 S. W. Rep. 242; Click v. State, 39 S. W. (2d) 39; Smith v. State, 111 S. W. (2d) 275; Childress v. State, 241 S. W. Rep. 1029.

Bill of exceptions No. 2 is concerned with certain newly discovered testimony which will probably be available upon a new trial hereof, and need not be further noticed.

Bill of exceptions No. 3 relates to the trial court's refusal to allow the appellant to prove by T. P. Watson certain testimony showing the conduct of the deceased at some time prior to the killing, which conduct was not reported to the appellant, and of which he had no knowledge. We are not impressed with the admissibility of this evidence, and think its exclusion was proper.

The remaining bills of exceptions fall under the matters treated heretofore herein in bill No. 1, or in the proposition that follows, which should dispose of all appellant's contentions.

It was the theory of appellant that because of the treatment accorded the deceased on the Wednesday just preceding the Saturday of the tragedy, the deceased had gotten some of his, deceased's, friends to agree with him to go to this club buffet and tear up the furniture and "get revenge" for his prior mistreatment. The testimony relative to such conspiracy was not admitted by the court, probably on account of its vagueness and the unsatisfactory character of such proof. It should be remembered that a conspiracy such as offered herein is provable by circumstances, and often such is the only character of proof that can be obtained, but in the instant case, in the event of a new trial, much of the proffered testimony will be admissible, not only as a circumstance showing such formed design, but will also be corroborative of the purported newly discovered testimony of one of the conspirators. A certain degree of latitude is permissible in such matters, and we think some of the excluded testimony should have been admitted on such grounds.

We feel sure that in the event of another trial hereof the court will conform his charge to the facts adduced thereon, and we see no reason for writing on the matters contained in the bills of exception complaining of the court charge.

For the errors discussed this judgment is reversed and the cause remanded.