J. R. WATSON, ALIAS JOE WATSON, ALIAS TEEBEE WATSON, v. THE STATE.

No. 15674. Delivered April 5, 1933.
Reported in 59 S. W. (2d) 126.

The opinion states the case.

*Howth, Adams & Hart,* of Beaumont, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Murder is the offense; punishment, confinement in the penitentiary for 15 years.

This is the second appeal in this case; the former appeal will be found reported in 48 S. W. (2d) 623.

The state's witness Roy E. O'Borski testified substantially to the following facts: He and the deceased had stopped their car near what was known as the Port Arthur Amusement Club in Port Arthur, Texas. As they entered the door leading into the club-room the deceased was directly behind the witness, and the appellant was standing directly inside the door. The witness spoke to him and said, "Hi, Joe," and then proceeded to the cigar counter a few steps away, and he then heard the deceased say, "Don't do that Joe," and he turned around and the appellant had a gun in his right hand and was holding the deceased by the collar with his left hand and stated, "I am going to kill you." The deceased said, "Don't do that, Joe," two or three times and the appellant then hollered, "Open the back door"; that during all this time the appellant was moving toward the wall and the deceased was trying to get loose. Appellant backed the deceased up against the wall and the witness said to the appellant, "Don't do that Joe. Put up the gun. We don't want to have any trouble here," and the appellant then put the gun on the said witness and said, "stay out of this. It is none of your affair." The appellant then hit the deceased over the head with the gun and then shot him. He was still

holding the deceased by the collar at the time he shot him. The witness further testified that the appellant, after he had shot the deceased and the deceased had fallen to the floor, put his gun in his pocket and walked out of the place with a man by the name of Jack Cooper. When the witness went over to where the deceased was lying, he was breathing but was about dead. He carried him to the hospital and he died a few minutes after reaching the hospital.

The appellant testified that a few hours before the killing, the woman with whom he was living as his wife told him that the deceased had forced her to go to Galveston with him and there have intercourse with him and that afternoon rang her up and asked her if he couldn't come up to see her. The appellant claimed to have had a double motive for the killing, he testifying that when he met the deceased on the occasion of the killing he intended to ask him for an explanation of his conduct and that the deceased and the witness O'Borski assaulted him and the killing was in self-defense.

A witness by the name of Virginia Watson testified that she had made an agreement to live as a common law wife with the appellant several years before and after they made the agreement they began living together as man and wife and had lived together ever since. She testified that on the afternoon of the killing the deceased had called her up three or four times and she had then told her husband about the time she had gone to Galveston with the deceased and the reason she went to Galveston with him was because he had threatened to do both she and the appellant bodily harm if she refused to go with him and that he would kill both of them if she refused to go with him. She went to Galveston with him on a Saturday night because of said threats and stayed down there with him until Monday morning at what was known as the Buena Vista hotel; that while she was there at the hotel the deceased had intercourse with her and she permitted him to do so because he had told her if she did not permit him to do so that he would kill her and she told the appellant about it on the day of the killing several hours prior thereto.

By bill of exception No. 17 appellant complains of the cross-examination by the prosecuting attorney of the witness Virginia Watson concerning her relations with other man and the deceased on the occasion of said trip to Galveston and respecting her drinking and having nothing on but stepins in the presence of other men on that occasion and denying that she was married. Substantially the same question was raised on

the former appeal of this case and in passing upon said issue this court, speaking through Judge Lattimore, used the following language: "Voluntary improper relations of appellant's wife with deceased and other men was provable as rebutting and combatting the claim of appellant that the woman told him that deceased had forced his attentions upon her, and forced her to have sexual relations with him. Complaint of the reception of such testimony was of no avail."

This also disposes of bill of exception No. 12 which pertains to the same question.

Bill of exception No. 14 shows that upon the trial and while appellant was testifying in his own behalf at a time when he had not put his general reputation in issue and had not asked for a suspended sentence in case of conviction, the district attorney asked the appellant on cross-examination the following question, "You have beat up several men, haven't you?", to which question the appellant objected as being improper and because it was an indirect way of putting the defendant's character in issue and was asked for the purpose of injuring the appellant and was only asked for that purpose. The court sustained the objection and instructed the jury to disregard the question, whereupon the district attorney asked the following question, "You cut up several men, haven't you," and whereupon the court sustained the objection and instructed the jury not to consider the same. The district attorney then asked the defendant, "You have been in the whisky business down there?", whereupon the appellant answered, "No, sir," and the district attorney asked the following question, "Teebee (meaning the appellant) do you mean to say you haven't been in the whisky business even after you were convicted in this other case before?", whereupon the appellant objected to the same and the court sustained the objection. Notwithstanding the court having sustained the appellant's objection to said questions, the appellant objected to all of said matters for the reason that said questions on behalf of the prosecuting attorney were done deliberately and wilfully for the purpose of going into the reputation of the appellant and by virtue of said questions he had brought out or had placed before the jury the fact that appellant was convicted on a former trial of this case and he was in the whisky business and had beat up and cut up several men.

That such questions were hurtful and improper is manifest. We can not gauge the evil effect on the jury of such improper questions. The appellant was not given the lowest penalty, and we think the cases cited in appellant's brief authority for hold-

ing that such action is reversible error. Childress v. State, 92 Texas Crim. Rep., 215, 241 S. W., 1029; Harrison v. State, 102 Texas Crim. Rep., 385, 278 S. W., 430; Hunter v. State, 113 Texas Crim. Rep., 90, 18 S. W. (2d) 1084.

By bill of exception No. 15 it is shown that the state attempted to elicit from the state's witness Mrs. J. J. Bell, sister of the deceased, testimony as to the physical condition of the deceased and that he had spent some time in the hospital in Galveston. This testimony was held inadmissible by this court on the former appeal of this case, and upon another trial of this case the state's attorney should not be allowed to attempt to go into said matters.

Numerous other bills of exception appear in the record. A number of said bills of exception complain of the argument of the district attorney. Since this case will have to be reversed on another issue, and the matters complained of are not likely to occur on another trial, we pretermit further discussion of same.

There are also a number of bills of exception to the charge of the court. A careful examination of said charge leads us to believe that same is a fair presentation of the law and affirmatively submitted every defense set up by the appellant in this case.

For the error pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.