Freeman Weldon **SENSABAUGH**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 41172.

Court of Criminal Appeals of Texas.

April 3, 1968.

———◆———

H. Edward Johnson, Fort Worth (Court appointed on appeal only), for appellant.

Frank Coffey, Dist. Atty., Jack Neal and Roland H. Hill, Jr., Asst. Dist. Attys., Fort Worth, and Leon B. Douglas, State's Atty., Austin, for the State.

### OPINION

ONION, Judge.

The offense is Murder with Malice; the punishment, assessed by the jury, life.

The sufficiency of the evidence is not challenged and we do not deem it necessary to set forth all the facts. The record does show that the deceased, Grover Cecil Steward, died from massive bleeding resulting from multiple stab wounds inflicted by the appellant in the front yard of the deceased's house at approximately 3 p.m. on November 30, 1966. The State's testimony reflects that approximately one week prior to the killing appellant, in presence of witnesses, displayed a knife, identified as the murder weapon, and threatened to kill the deceased with the same, and further stated he had a pistol if he was unsuccessful with a knife. Such threats were shown to have been communicated to the deceased. Other State's testimony reflects that when the appellant entered the yard just prior to the killing the deceased told him to "stay out" and fired a shotgun into the ground approximately 30 degrees away from appellant's position. Thereafter it appears that appellant with a knife in hand advanced on the deceased, a struggle ensued and the stab wounds resulted. Appellant's claim of self-defense was rejected by the jury's verdict.

In appellant's first ground of error it is claimed that the improper cross-examina-tion of appellant, permitted by the trial court over objection, resulted in the introduction of unsworn, improper and prejudicial testimony before the jury.

He contends that the prosecutor's questions were framed and calculated to convey to the jury that (1) appellant had encountered the deceased on the morning of the day of the killing, (2) was then armed with a pistol and (3) made the deceased dance by shooting at his feet, (4) that appellant had that morning threatened to kill the deceased and (5) that the deceased was so scared he had his car packed ready to move at the time of the killing, (6) that the police had been looking for appellant all day, and (7) that appellant had threatened to kill his 13-year-old daughter and she had called the police.

"When the defendant in a criminal case voluntarily takes the stand and testifies in his own behalf he occupies the same position and is subject to the same rules as any other witness, except where some statute forbids certain matters to be used against him, such as proof of his conviction on a former trial of the same case, or his failure to testify on a former trial, or a confession made while he was in jail without his having been first cautioned that it might be used against him." 61 Tex.Jur.2d, Witnesses, Sec. 36, p. 573.

With such rule in mind we return to the record. Appellant's testimony shows that he had been to the deceased's house twice on the morning of the killing to see Sal Stewart, who lived with the deceased and who later left the scene of the killing with the appellant, but who had died prior to trial. Such testimony does not show that on such occasions he encountered the deceased.

After denying on cross-examination that he had a gun at the time of the killing, a transcription of the court reporter's notes reflects the following:

"Q. But you had it that morning, didn't you, when you went out there to Cecil's house, and told him 'Dance,

Boy, dance', and you shot at his feet in the floor of that house out there, didn't you?

"A. I did not.

"Q. You had it that very morning, didn't you?

"A. I did not.

"Q. And you pulled it out, and you told him 'Dance'?

"A. I did not.

"MR. CRAIG: May it please the Court, there is no testimony of any kind to support a question of that sort.

"THE COURT: This is cross-examination. I will permit it. Overruled.

"MR. CRAIG: Not [Sic] my exception."

It is observed that the question was asked and answered in the negative three times before any objection was interposed.

State's witnesses had related that appellant had threatened to kill the deceased and that these threats had been communicated to the deceased.

Thereafter appellant was asked on cross-examination:

"Q. The truth of the matter is, you had threatened to kill him, hadn't you, before you went over there?

"A. I had not.

"Q. And the truth of the matter is, that Cecil had been running scared all day, hadn't he?

"A. I don't know.

"MR. CRAIG: Now, Your Honor, I am going to object; Counsel is engaged in more badgering of the witness.

"THE COURT: I'll overrule it."

We find nothing in the foregoing to indicate that the question was limited to a threat made only on the morning of the killing.

Appellant disclaimed on cross-examination any knowledge as to whether the deceased's car was packed and ready to move at the time of the killing. No objection was offered to such testimony.

After having stated on direct examination that his only purpose of going to the deceased's house at the time the killing occurred was to see if Sal Stewart was still interested in the purchase of his car, appellant was asked on cross-examination:

"Q. You are certain that you got your wife to take you over there to hide from the Police, because the Police had been called by your own daughter to come out there—"

Appellant's general objection to such question was promptly sustained and thereafter appellant made no request to instruct the jury to disregard or a motion for mistrial.

Subsequently, as the cross-examination changed from subject to subject, the prosecutor, after establishing the appellant's daughter's name, age and address, asked:

"Q. In truth and in fact, this is not the only person you have threatened to kill, is it?"

Again appellant's general objection was sustained and no further relief was requested by the appellant.

In answer to the prosecutor's questions appellant related that following the killing he had gotten rid of his bloody clothes and that he and Sal had driven around to avoid being "picked up by the police." He was then asked:

"Q. The Police had been looking for you all day, had they not?

"A. No; they hadn't.

"Q. You had no reason to believe that they were looking for you that morning?

"A. No.. I was at home—

"MR. CRAIG: Your Honor, we object to that—

"THE COURT: Just a minute, Counsel.

"A. I was at home until around three o'clock. * * * I was at home from nine-thirty until three o'clock. * * * If the Police had been looking for me, I would have been very easily located.

"Q. And your testimony is that the Police did not come to your house at 200 North Chandler, on November 30th, 1966?

"MR. CRAIG: We object to that, Your Honor. * * * He is again indulging in his attempt to prejudice this Jury. And it is irrelevant and immaterial.

"THE COURT: I overrule your objection."

Thereafter appellant testified the police had not come by his house while he was home or at any other time that day to his knowledge.

This, we think, is a fair summary of the cross-examination of which appellant complains.

The State takes the position that the questions asked were proper in view of appellant's testimony on direct examination including his theory of self-defense, or to prove state of mind, and that such questions were all asked in good faith. They point to the lack of objection to some questions and the proper action of the court in sustaining some objections made.

■ The Court of Criminal Appeals rarely reverses a conviction of crime solely because an improper question was propounded to the defendant as a witness. To cause reversal the question must be obviously harmful to the defendant. See Mounts v. State, 148 Tex.Cr.R. 177, 185 S.W.2d 731.

■ In deciding such question it must be remembered that each case has its own characteristics and this Court will look at the entire record with the surrounding circumstances, the nature of the evidence sought and its possible relationship to other testimony, in order to determine the probability or possibility of injury.

■ It is, of course, well established that an accused is to be tried upon the merits of each case alone and that proof of extraneous crimes or specific acts of misconduct are not generally admissible, except under certain conditions and exceptions.

The case at bar can be distinguished from Clark v. State, 115 Tex.Cr.R. 71, 29 S.W.2d 390 and Jackson v. State, 115 Tex.Cr.R. 320, 29 S.W.2d 778, relied upon by the appellant. In those cases the question put to the defendant on cross-examination carried the imputation that the defendant had attempted to suppress testimony in other cases than the one on trial. Further, unlike Lera v. State, 138 Tex.Cr.R. 127, 134 S.W.2d 248, the questions here did not involve a violation of the confession statute.

■ We recognize that under certain circumstances, permitting a question on cross-examination imputing guilt of another offense is prejudicial error notwithstanding the negative answer of the defendant. Lamm v. State, 94 Tex.Cr.R. 560, 252 S.W. 535. It is noted that in Lamm, however, the defendant claimed that he was not present at the scene of the offense, and that the evidence as to guilt or innocence was nicely balanced.

■ We have carefully examined the entire record and cannot conclude that under the circumstances presented that the questions were improper or were framed in such a way as to be so harmful to the appellant as to call for reversal, particularly in light of the court's rulings.

Appellant's first ground of error is overruled.

■ In his remaining ground of error appellant complains that the court unduly restricted his right of cross-examination of

the State's witness, Mrs. Patsy Smithpeter. We have examined each question asked which the court, over the State's objection, refused to allow the witness to answer and find that most are irrelevant and immaterial to any issue in the case. If revelant, the appellant has failed to show what answers the witness would have given and nothing is presented for review.

Finding no reversible error, the judgment is affirmed.