Charles J. WEBBER, Appellant,

v.

The STATE of Texas, Appellee.

No. 43864.

Court of Criminal Appeals of Texas.

Nov. 2, 1971.

Tom Moore, Jr., Waco, for appellant.

Martin D. Eichelberger, Dist. Atty., Frank M. Fitzpatrick, Jr., Kenneth H. Crow and James R. Barlow, Asst. Dist. Attys., Waco, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This appeal is from a conviction for the offense of unlawful sale of a narcotic drug, to-wit: marihuana. The punishment was assessed at five years.

The appellant, a college student, entered a plea of guilty before a jury and made application for probation.

The judgment will be reversed.

The evidence introduced showed that a police informer (a student) came to the appellant's apartment where the appellant and others published an "underground" newspaper. The police informer, using an assumed name, had been to the appellant's apartment several times to buy a newspaper and to get to know the appellant and his associates. On the informant's fourth visit, he feigned smoking a marihuana cigarette with those present. The informer then notified the police and was given marked bills. He went back to the apartment approximately two hours later. The informer obtained a small quantity of marihuana. After giving the appellant the three marked dollar bills he said "Maybe that will help you with your newspaper."

Appellant complains in his ground of error No. 3 of the cross-examination of his first character witness. A portion of the cross-examination follows:

"Q. Let me ask you this, Mr. Cook: Have you heard, since you have testified that you knew Chuck Webber so well, of course you know at the time this offense occurred, he was not enrolled in Baylor University, is that right?

"A. No, sir, I did not know that.

"Q. Have you heard any reason for him not being enrolled in Baylor University?

"A. No, sir, I have not.

"Q. Have you heard that he was expelled from Baylor University?

"MR. MOORE: Object to that, your Honor, on the grounds that it calls for testimony as to an explicit act, and is attacking the morality and character of the defendant, which has not been placed in issue. The gentleman is testifying to his character for being a peaceful law abiding citizen.

"THE COURT: I will overrule your objection.

"MR. MOORE: Note our exception.

"A. Will you repeat the question.

"Q. The question was, Mr. Cook, have you heard that Mr. Webber was expelled from Baylor University, when he was caught shoplifting. * * *

"MR. MOORE: I object to that, your Honor, on the grounds that it is particularly offensive and prejudicial and that it calls for testimony in regards to alleged specific offense without any history of any charges being filed, and it is calculated for the sole purpose of prejudicing the rights of the defendant.

"COURT: I sustain that objection.

"MR. MOORE: And ask that the jury be instructed to disregard it.

"COURT: You are so instructed.

"MR. MOORE: And on the grounds that the very asking of such a question is so prejudicial that an instruction can't cure it, we respectfully move for a mistrial.

"COURT: I deny the Motion.

"MR. MOORE: Note our exception.

"MR. CROW: We pass the witness."

The fair interpretation of the prosecutor's question propounded to the character witness was to assert as a matter of fact that the appellant had been caught shoplifting. The asking of this question constituted reversible error. The fact that the appellant had placed his general reputation in issue did not authorize the state in combating proof of good reputation to show specific acts of misconduct on his part nor did it authorize the state to make inquiry in such a manner as to show or assert the truth thereof that the appellant had

been guilty of particular offenses of misconduct. 1 Branch's Ann.P.C.2d 175, Sec. 170.

In McNaulty v. State, 138 Tex.Cr.R. 317, 135 S.W.2d 987, this court said:

"Furthermore, a question is objectionable independent of the answer when a proper construction of such question results in a charge that a specific offense has been committed. The objection to the question in this case was that it implied the commission of an offense. * * * The question as given is nothing else than a direct charge that such a thing had been done. * * * Some [questions] may be harmless and some may be made harmless by a negative answer, but whenever the question is so stated that it amounts to an assertion of a fact under the conditions here under discussion and it implies the commission of another offense, it may be said that its harmfulness cannot be cured by the answer and seldom by any instruction which the court is able to give the jury."

In Pitcock v. State, 168 Tex.Cr.R. 204, 324 S.W.2d 855, it was said:

"The record reflects that the witnesses Beck, Rose and Hinninger were asked upon cross examination the following questions:

'(The witness Beck) Q. Mr. Beck, I will ask you if you have heard during your discussions there about this boy's reputation, *about the trouble that he had concerning a DWI conviction in Stephens County in 1953?*

Ans. No, I had no knowledge of it. (Emphasis added.)

'(The witness Rose) Q. Have you heard them discuss *the trouble that he was in in 1951 concerning a DWI conviction in Taylor County, Texas?*

Ans. I don't know. (Emphasis added.)

'(The witness Hinninger) Q. Have you ever heard during these discussions

anything concerning the *trouble that the defendant was in Wayne Pitcock in 1953 concerning a DWI conviction in Stephens County?*

'Ans. No Sir.' (Emphasis added.)

"Appellant objected to the questions on the ground that it was an effort on the part of the State to attack his reputation by proof of specific instances of law violation, and as to the inquiry concerning the 1953 conviction in Stephens County upon the further ground that there was no allegation in the indictment of such a conviction.

"[1] The rule regarding cross examination of a character witness is stated in Wiley v. State, 153 Tex.Cr.R. 370, 220 S.W.2d 172, 174 as follows:

'Witnesses attesting the good reputation of an accused may, as affecting the weight, credibility, and sincerity of their testimony, be asked upon cross-examination as to whether they had heard of acts of the accused inconsistent with that reputation. * * * Such, however, is as far as the State is permitted to go in such matters, for it is expressly prohibited from conducting the cross-examination or framing the interrogatories so as to show specific acts of misconduct on the part of the accused or that he has, in fact, been guilty of such acts.'" (Emphasis supplied in the opinion quoted.)

In Parasco v. State, 168 Tex.Cr.R. 89, 323 S.W.2d 257, this Court admonished:

"Upon another trial, the question about Cause No. 71,661, not plead in the indictment, should not be asked. Whenever a question is asked which amounts to an assertion of fact and implies the commission of another offense, its harmfulness cannot be cured by the answer or failure to answer, or by any instruction which the court may give, and reversible error is reflected thereby. McNaulty v. State, 138 Tex.Cr.R. 317, 135

S.W.2d 987, and Wharton v. State, 157 Tex.Cr.R. 326, 248 S.W.2d 739."

This court has consistently held that such questions are improper. See also Parrish v. State, 163 Tex.Cr.R. 252, 290 S.W.2d 245; Wharton v. State, 248 S.W.2d 739; and Wiley v. State, 220 S.W.2d 172.

■ The state relies upon Horton v. State, 169 Tex.Cr.R. 210, 333 S.W.2d 380, and Smith v. State, Tex.Cr.App., 411 S.W.2d 548, where it was said that witnesses attesting the good reputation of an accused may, as affecting the weight, credibility and sincerity of their testimony, be asked upon cross-examination as to whether they have heard of acts of the accused inconsistent with that reputation. This is the correct rule of law. But it requires that the form of the question be properly stated. It is noted that the prosecutor in this case properly cross-examined subsequent character witnesses in regard to the same subject. The motion for a mistrial should have been granted.

The appellant's ground of error No. 1 complains that appellant, over objection, was forced to testify that he was expelled from Baylor University because he was suspected of shoplifting from the Baylor Book Store. The error complained of was raised in the manner following:

"Q. But, you did not enroll the next semester, is that correct?

"A. I did not.

"Q. Why did you not enroll the next semester?

"A. I was asked not to because I had long hair and shorts.

"Q. Long hair and what?

"A. I wore shorts on campus.

"Q. Was there any other reason that you were asked not to enroll in Baylor University?

"A. Suspected. * * *

"MR. MOORE: I object to that, your Honor, on the grounds that it is an attack on the character and reputation of the witness by alluding to a specific offense, for which there has been no charges filed, and no trial, and no conviction.

"COURT: Overrule your objection.

"MR. MOORE: Note our exception.

"Q. Was there any other reason that you were expelled from the University, Mr. Webber?

"A. I was *supposed*, shoplifting at Baylor Book Store."

■ The appellant voluntarily took the witness stand to testify on his own behalf. When an accused voluntarily takes the stand he subjects himself to any legitimate cross-examination within the rules of evidence. He may be contradicted, impeached, discredited, attacked, sustained, bolstered up and cross-examined as to new matter; except where the law forbids certain matters to be used against him. Brumfield v. State, Tex.Cr.App., 445 S.W.2d 732; Santiago v. State, Tex.Cr.App., 444 S.W.2d 758; Allaben v. State, 418 S.W.2d 517.

■ Had the appellant been formally charged but not yet convicted with the offense of shoplifting, evidence that such charge had been filed could not properly be admitted. Art. 38.29, Vernon's Ann. C.C.P.; Garcia v. State, Tex.Cr.App., 454 S.W.2d 400, and the cases there quoted and cited. Here, the appellant had not even been formally charged with the offense of shoplifting.

■ The state urges that this evidence was legitimate under the provisions of Art. 37.07, Sec. 3(a), V.A.C.C.P. That provision is:

"Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to the prior criminal record of the defendant, his general reputation and his character. The

term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged."

Specifically, the state argues it shows appellant's general reputation and his character. It shows, to the contrary, a specific act rather than appellant's general reputation and character and it is therefore not admissible.

The conviction is reversed on the two grounds of error discussed.

In view of another trial, we have grave doubts concerning the admissibility and use of State's Exhibit 13 which was a copy of an "underground" newspaper of which the appellant admitted editorship.

The judgment is reversed and cause remanded.