**Charlie William HOWARD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 47204.**

Court of Criminal Appeals of Texas.

Feb. 13, 1974.

Harold P. Brown, Jr., Lubbock, for appellant.

Alton R. Griffin, Dist. Atty., and Richard Palmer, Asst. Dist. Atty., Lubbock, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a murder with malice conviction where the punishment was assessed by the jury at life imprisonment.

The sufficiency of the evidence is not challenged. The evidence is undisputed that the appellant shot and killed Elijah Pickard in the F & L Lounge in Lubbock on April 20, 1971. Appellant acknowledged his action, but testified he acted in self-defense. The State's evidence reflects that a number of people were in the lounge on the night in question when the appellant and the deceased began an "angry discussion" and were "arguing real bad" near the pool table. Winnie Fay Hebron, the manager, asked them to cease, and the deceased went to sit on a stool behind or near the counter. Shortly thereafter, the appellant approached the deceased and fired several shots at him. The deceased was shown to have died, from bullet wounds to the head.

Appellant testified he had never seen the deceased before the night in question and that he and a friend were playing pool when the deceased approached and began "messing with pool balls" during the game, moving them from the positions occupied on the table. Appellant asked him to stop and an argument ensued in which appellant related the deceased threatened to kill him. After the argument ceased, the deceased went to the counter where the appellant knew guns had been kept in the past and he heard someone say, "Don't do that." Appellant then related he borrowed a pistol and shot the deceased, who he feared was about to shoot him. He offered other witnesses to the fact that guns in the past had been kept behind or under the counter of the lounge.

In his first ground of error appellant contends the court erred in refusing to allow him to inspect and use a police offense report in cross-examination of Officer H. D. Clanton, which he contends the prosecutor had used during cross-examination. He contends that both the "use before the jury" rule and the Gaskin Rule [1] were violated.

On direct examination Officer Clanton testified that he and Officer Nevarez responded to a call and went to the F & L Lounge on the date in question and found blood on the floor, discovered the deceased had been taken to the hospital, whereupon the two went to the hospital where Clanton related he observed the wounds on the body of the deceased which he described. Such testimony was cumulative of other evidence in the case.

On cross-examination the appellant inquired if Clanton had prepared an offense report and he answered, "Yes, sir, we did. . . ." Upon request the court ordered Assistant District Attorney Hurley to produce his copy and deliver it to the appellant. The prosecutor then took the witness on voir dire and established that the report had been made by Officer Nevarez. The court then withdrew its earlier order in light of such evidence. No objection or exception was taken to such action.

At the hearing on the motion for new trial the appellant offered the affidavit of juror Donald Signor. See Article 40.06, Vernon's Ann.C.C.P. Said affidavit reflected the juror's recollection of the above described discussion concerning the offense report and stated that "it was apparent the prosecuting attorney had a copy of this report and that he was utilizing it while questioning the officer." The affidavit continued, "There was a thought in my mind, and I think in the minds of the other jurors, that the offense report contained something that was detrimental to the state's case; and that is why the state wanted to keep it out. We wondered what it was that was being kept from us."

---

1. See Gaskin v. State, 172 Tex.Cr.R. 7, 353 S.W.2d 467 (1962).

Mrs. Ward Bartle, another juror, testified she recalled the discussion, but did not see the prosecutor exhibiting or reading from any such report at any time.

Troy Hurley, assistant district attorney, testified he questioned Officer Clanton from notes he had prepared for the purpose of trial (in part from the offense report), but that a copy of the offense report was in his file and he did not remove the same until the court had instructed him to do so, and that when Officer Clanton testified he had not made the report, it was immediately returned to the file.

Motion for new trial was overruled, but the ever-careful trial judge ordered the offense report sealed and made a part of the appellate record.

■ Under the "use before the jury rule" a defendant is entitled to inspect, upon his timely request, any document, instrument or statement which has been used by the State before the jury in such a way that its contents become an issue. Sewell v. State, 367 S.W.2d 349, 351 (Tex.Cr. App.1963). The rule was discussed at some length recently in White v. State, 478 S.W.2d 506 (Tex.Cr.App.1972).

■ In the instant case the witness did not have his attention directed to the instrument itself, nor was it exhibited or read aloud to the witness, nor do we find any reference in the record to indicate to the jury that such instrument was being used as the basis for the interrogation. While juror Signor's affidavit said the report was so utilized, the transcription of the court reporter's notes does not support his assertion, and the prosecutor's testimony that he was using his own notes was not disputed. While the offense report was taken from the file in the jury's presence, it was not done in such a manner so that the contents of the instrument became an issue.

We cannot conclude the "use before the jury rule" was violated. White v. State, supra; Lewis v. State, 481 S.W.2d 804, 806 (Tex.Cr.App.1972) (concurring opinion).

■ Under the "Gaskin Rule" where a witness for the State has made a report or has given a statement prior to testifying, the defendant, after a timely motion or request, is entitled to inspect and use such prior and available report or statement for cross-examination and impeachment purposes, and this right obtains even though the witness has not used the instrument to refresh his memory. See Gaskin v. State, supra; Zanders v. State, 480 S.W.2d 708 (Tex.Cr.App.1972).

■ If the "Gaskin Rule" comes into play, it is error for the trial judge to fail to require production of a prior and available statement or report of the witness, though the error may be harmless error. The harmfulness of the error is dependent upon whether an examination of the statement by the appellate court demonstrates that the defendant should have been allowed the statement for the purpose of cross-examination and possible impeachment. Error, of course, will result if the defendant is denied the opportunity to have made available the statement or report for the appellate record in order that injury, if any, may be shown. Lewis v. State, supra; Rose v. State, 427 S.W.2d 609, 612 (Tex. Cr.App.1968) (concurring opinion).

The "Gaskin Rule" has been held limited to a previous report or statement personally made by the witness testifying for the State. Artell v. State, 372 S.W.2d 944 (Tex.Cr.App.1963).

When Officer Clanton testified he had not made or prepared the offense report, it was obvious the court's refusal to order production of the same was based upon the Artell decision.[2]

2. This writer has criticized the limitation imposed by Artell and would overrule Artell. See Lewis v. State, supra; Leal v. State, 442 S.W.2d 736 (Tex.Cr.App.1969) (concurring opinion); Rose v. State, 427 S.W.2d 609 (Tex.Cr.App.1968) (concurring opinion). Cf. Dover v. State, 421 S.W.2d 110 (Tex.Cr. App.1967). See also 16 Baylor L.Rev. 51, 60 (1964).

Even if it can be argued that the "Gaskin Rule" is applicable, the error, if any, is harmless. An examination of the offense report which was brought forward sealed reveals that it is totally consistent with Officer Clanton's testimony.

It is difficult to understand why the State went to such great lengths to prevent the appellant from inspecting the offense report when the appellant could not have effectively cross-examined with such report; the jury apparently thought the State was attempting to hide something, and the time of the trial court and of this court was consumed, not to mention the hours necessary for briefing and preparation for oral argument on appeal.

Next, appellant contends the court erred in allowing the prosecutor in his closing argument to inject a fact not admitted into evidence.

The argument at the guilt stage of the trial which is complained of is:

"Now, the defense attorney would also have you believe that I am hiding witnesses, that the police officer who wrote this report would say something that was not favorable to me. Well, Ladies and Gentlemen, it just so happens that the police officer I did call had more to do with the actual investigation of this crime than that other officer did. He saw certain things the other officer—"

At this point the appellant objected and the court overruled the objection, but cautioned the prosecutor. Thereafter, the prosecutor pointed out to the jury that he had called the witnesses "who had the most to offer" and could testify intelligently, etc.

Earlier, the appellant's counsel had argued:

"And that the report finally on this case was made not by this officer who came but by his superior in the investigation, and for that reason, and properly as the judge ruled, I cannot look at the

report and interrogate this officer. I can only look at the report in interrogating his superior if the State calls him."

The State's objection that the defense was free to subpoena anyone was overruled and appellant's counsel continued:

"So I don't know what his superior would have had to say and I don't know what is in the report, but is it a fair inference that it is not helpful to the State or they would have been here."

The complained of argument was thus clearly invited by such argument and presents no error.

Appellant also complains of the court's failure to grant a mistrial upon request when the prosecutor "asked a witness about an extraneous offense."

On cross-examination of Winnie Fay Hebron, appellant elicited the fact that he frequented the F & L Lounge and that he had not "made any trouble," been in any fights, etc. Then the witness was asked:

"Q You never even heard of him being in any kind of trouble?

She answered:

"A No, I haven't."

On redirect examination the record reflects the following:

"Q Mrs. Hebron, had you heard that on August 15, 1966, that Charlie William Howard had been picked up in Lubbock, Texas, for carrying a prohibited weapon?"

Appellant's counsel objected that his interrogation did "not entitle the State to put in evidence an extraneous crime." His motion for a mistrial was overruled.

It is clear from the appellant's cross-examination of the State's own witness that he placed in issue his reputation for being a peaceful and law-abiding citizen, even though the classic and formal type of ques-

tion was not asked. See Childs v. State, 491 S.W.2d 907 (Tex.Cr.App.1973).

■ On appeal appellant also complains that the form of the question implied to the jury he had been previously arrested and convicted for carrying a prohibited weapon since the prosecution used the phrase " . . . had you heard . . . " instead of " . . . have you heard . . . . " While the questions should not have been asked in the form that asserts the truth of the matter, Webber v. State, 472 S.W.2d 136 (Tex.Cr.App.1971), no objection on this ground was raised during the trial and is presented for the first time on appeal. The contention that the question was improperly phrased comes too late.

Lastly, we shall consider appellant's contention that the trial court erred by refusing to grant a new trial upon a showing of jury misconduct "which consisted of incorrect statements of the law made during discussion of parole."

It is appellant's contention that some of the jurors stated during their deliberations that the appellant would only have to serve one-third of the time given by the jurors.

Mrs. Bartle, a juror, stated, "Several of us, I guess,—we seemed to know good behavior counts for two-thirds of a prison term, so we wondered whether a third of sixty-three years or a third of life would be the longest, which would be longer." Later, she related someone stated that "one-third" was the rule, but no one professed to know the law or was definite. The affidavit of juror Signor reflects a discussion of the parole laws and statement or statements as to the one-third rule. Thereafter, the question was submitted to the court and the court instructed the jurors they were not to consider such question, that it was a matter for the Board of Pardons and Paroles. Mrs. Bartle testified that thereafter there was no further discussion of the parole issue, while Signor's affidavit stated that thereafter there was a brief discussion.

It is a matter of common knowledge that from time to time inmates of the Texas Department of Corrections are released on parole, and it is not every mention of parole which calls for a reversal. Taylor v. State, 420 S.W.2d 601, 608 (Tex.Cr.App. 1967) and cases there cited.

■ It appears that the formula mentioned was not a misstatement of the law. See Article 42.12, Vernon's Ann.C.C.P., and Article 6184*l*, Vernon's Ann.Civ.St. A discussion of parole by a jury will not constitute error, even where it is shown that one or more jurors changed his or their votes as a result thereof, unless it be shown that the statement was a misstatement of the law. Jones v. State, 462 S.W. 2d 578, 580 (Tex.Cr.App.1970).

■ Even if it can be argued, as appellant does, that the statements about the "one-third" rule were a misstatement of the law, see Article 42.12, Sec. 15, Vernon's Ann.C.C.P., and Article 6184*l*, Vernon's Ann.Civ.St., not every misstatement of the parole law during deliberations calls for reversal. This court has held that even though a remark or remarks concerning parole are made by a juror who does not profess to know the law but it is not further discussed by the jurors and is not relied upon by any juror, the making of the remarks will not constitute reversible error. Jones v. State, supra.

The judgment is affirmed.

MORRISON and ODOM, JJ., concur in the result.