**Charles Richard ELS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 49072.**

Court of Criminal Appeals of Texas.

June 25, 1975.

Rehearing Denied July 16, 1975.

---

**12**

Calvin A. Hartmann, Houston, for appellant.

Carol S. Vance, Dist. Atty., Clyde F. DeWitt, III, and Jack Bodiford, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

Appellant was convicted of murder; punishment was assessed at ten years.

In grounds of error four through nine, appellant contends the trial court committed error in allowing the State to go into his character and reputation for being peaceful and law abiding when it had not been placed in issue and for allowing the State to ask numerous "have you heard" questions of the witness Edith Stribling, the mother of the deceased. Proper objections were made to preserve these grounds for review.

The State takes the position that the only probative evidence given by the witness Stribling was of the character and reputation of appellant.

The entire testimony elicited on direct examination of Stribling, omitting conversation among counsel and the court, was as follows:

"Q. Would you talk loud enough for us all to hear and tell us your name, please?

"A. Edith Stribling.

"Q. And where do you live?

"A. 13601 Kaltenbrun. I can't say it.

"Q. Do you know Charles Els seated here?

"A. Yes, sir.

"Q. And it was your daughter Joy Serb that was shot and killed?

"A. Yes, sir.

"Q. How long have you known Charles Els?

"A. Pretty close to a year.

"Q. Was he going with your daughter?

"A. Yes, sir.

"Q. Did they come to your house on many or few occasions during this period of time that you have known him?

"A. Yes, sir, lots of times. He would eat supper out there.

"Q. They would come out there and both eat supper?

"A. Yeah, he would come out and help me do things.

"Q. Help you do what?

"A. He painted a room for me, fixed the bathroom like, fixed my car, just anything I asked him to do.

"     .     .

"Q. I hand you what has been marked Defendant's Exhibit No. 1 and ask you not to exhibit it to the jury at this time. Would you look at it yourself?

"A. Yes.

"Q. Is that a picture that you took and handed me?

"A. My little boy taken it in our house.

"Q. When?

"A. Right after Christmas.

"Q. Of '72 last year?

"A. Yes, sir.

"Q. Just a few months ago?

"A. Yes, sir.

"Q. And that depicts one of those occasions when Charles Els was visiting in your home with your daughter?

"A. Yes, sir.

". . .

"Q. (By Mr. Kershner) Mrs. Stribling, during the year that you have known Charles Els, have you known him to beat up your daughter?

"A. (By Witness) No, sir.

"Q. He has never used any force or violence on her (the deceased) that you know of?

"A. No.

"Q. Have you ever known him to threaten to kill her or harm her?

"A. No, sir.

"Q. Did they ever discuss with you their plans for matrimony?

"A. Yes, sir. He wanted to marry her, and she said, 'Well, I am not quite ready,' so—but she told me she was going to marry him and she would go over ever weekend and I would try to call her back home. So, she would say, 'Well, I am going to stay over here.' I said, 'Well, why don't you come home?' I wanted her to go to mama's with me. And she said, 'Well, because I love him, I want to marry him.' And so, I just—he says, 'I will take care of her until you get back,' so he did.

"Q. Did you know Bill Selman and Tom Fenrose that was out in the hall?

"A. Yes, sir, but I haven't saw them too often.

"Q. Have you had occasion to go to either one of their homes?

"A. Yes, sir.

"Q. What was the occasion?

"A. Well, I went there once to pick up Joy. And then I went over to Bill's house to take a watch for him to fix. He fixes watches.

"Q. He is a watchmaker?

"A. Yes, sir. I saw Tom lots of times down at the restaurant where he used to work until he got in the hospital on 24th and Shepherd when the old one was there.

"Q. Do you have any animosity in your heart for Charles Els?

"A. Do what?

"Q. Do you hold anything against Charles Els?

"A. No, sir, I don't."

▮ We find that this testimony does not attempt to show the jury appellant's "good character and law abiding habits" (Childs v. State, Tex.Cr.App., 491 S.W.2d 907). The State is mistaken in its reliance on the "magic words" rule of *Childs*. While we adhere to the rule of *Childs*, we find it inapplicable to the facts of this case. The rule that "magic words" are not required to make a witness a character witness does not mean that every defense witness is a character witness.

▮ The State points to the following testimony elicited on *cross-examination*:

"Q. Now, when you talked about Charles Els and his efforts in your behalf, I believe you said he painted a room. And what else?

"A. He helped fix some lights, he fixed my car, he would do anything I would ask him to.

"Q. Do you know his Pastor Rode?

"A. His what?

"Q. His Pastor Rode?

"A. I just met him since Joy has been going over to Charles'.

"Q. And are you familiar with their friends? I mean the friends of Charles Els and people that he associates and frequents with?

"A. Some of them.

"Q. And so, these questions that you have been answering for Defense Coun-

sel, do you mean to say by your answers that Charles Els is a man of good character?

"A. Well, I think so.

"Q. And that is what you meant when you answered those questions of Defense Counsel?

"A. I never seen him drunk. I have saw him drink a beer, but I have never seen him drunk or anything.

"Q. So, when you were answering the questions of the Defense Lawyer—and I will have them read back to you if it is necessary—did you mean to imply that the Defendant, as far as you know, is a man of good character and reputation?

"A. I thought so, yes, sir. I still say so.

"Q. And that is what you meant when you were answering this lawyer's questions?

"A. Yes."

The State may test a character witness with proper "have you heard" questions, but it may not transform, by its own questions, a witness who is not a character witness into one in order to be able to ask "have you heard" questions. "Have you heard" questions should not have been permitted.

The "have you heard" questions asked by the State were these:

"Have you heard that on December 8th of 1952 the Defendant was arrested for indecently exposing his person to a female?"

"Have you heard . . . that on March 2, 1956, the Defendant was again arrested and was charged with the offense of exposing his person?"

"Have you heard that on June 30th of 1960 the Defendant was arrested and charged with the offense of carrying a pistol?"

"Have you heard that on October 4th of 1969 the Defendant was arrested pur-

suant to a warrant for his arrest for the offense of burglary and theft?"

"Last of all, have you heard that on September 13th of 1960 the Defendant was convicted in the County Court here in Harris County for the offense of carrying a pistol?"

Each question was answered in the negative.

While it is true that the mere asking of an improper question will rarely constitute reversible error (see Sensabaugh v. State, Tex.Cr.App., 426 S.W.2d 224) and an answer that one has not heard of the incident inquired about will reduce the issue to one of whether the mere asking of the question is reversible error (see Wallace v. State, Tex.Cr.App., 501 S.W.2d 883), the fact remains that where improper questions in the area of cross-examination of a character witness have been asked, this Court has not hesitated to reverse solely on the basis of the improper, prejudicial question (e. g. Hurt v. State, Tex.Cr.App., 480 S.W.2d 747; Billingsley v. State, Tex.Cr.App., 473 S.W.2d 501; Webber v. State, Tex.Cr.App., 472 S.W.2d 136).

The issue in this case, however, is not whether the State used the proper form of question to test a character witness, but whether the action of the State putting the reputation of the accused in issue, when he had not put his reputation in issue, requires reversal. In Coon v. State, 117 Tex.Cr.R. 158, 35 S.W.2d 419, this Court held:

"Bill of exceptions No. 2 shows that upon the trial, and while appellant was testifying, and at a time when he had not put his general reputation in issue, the district attorney asked appellant, on cross-examination, if he did not have the reputation of being the best whisky maker in San Augustine county. The question was objected to, for the reason that his reputation had not been put in issue, and for the further reason that said question placed the defendant in the position

of having to answer or object to same, either of which would prejudice him before the jury. The court overruled the exception to the question, and the bill shows that the court failed to instruct the jury not to consider the asking of such question, and that to this action of the court exception was taken. The only qualification to the bill is that the question was not answered. That such question was improper and hurtful is manifest. We cannot gauge the evil effect upon the jury of such improper question. The appellant was not given the lowest penalty. We think the cases cited in appellant's brief authority for holding such action reversible error. Childress v. State, 92 Tex.Cr.R. 215, 241 S.W. 1029; Harrison v. State, 102 Tex.Cr.R. 385, 278 S.W. 430; Hunter v. State, 113 Tex.Cr.R. 90, 18 S.W.2d 1084."

An even more direct statement of the harm inflicted is found in Childress v. State, 92 Tex.Cr.R. 215, 241 S.W. 1029, 1032–1033, where this Court held:

"Appellant had in no way put his reputation in issue. Upon cross-examination of the witness Elam the district attorney propounded this question:

" 'Do you know defendant's reputation here, as to whether he is a law-abiding citizen, or otherwise?'

"Appellant objected to the question, and same was sustained by the court. Counsel for appellant requested the court, in the presence of the jury, to instruct the jury to disregard the question, and further to instruct them that the question was improper; but this the court refused to do. The learned trial judge qualifies the bill by stating that appellant did not submit any special charge to the court instructing the jury to disregard the question. It is our opinion that the question was such a gross violation of all rules of procedure that it should not be necessary for appellant to request the court to instruct the jury that it was improper,

and to disregard the same. The court should have done so of his own motion, and should have promptly reprimanded the district attorney for asking such a question. There is no better known rule than that the reputation of the defendant cannot be inquired into by the state unless the accused himself opens up the way, and for the district attorney to propound such a question, thereby forcing the accused in the presence of the jury to interpose an objection, called for prompt action on the part of the court. As long as the law presumes an accused to be innocent, attorneys for the state ought not inject into the trial a matter which every well-informed lawyer knows is improper. Common justice to a party accused of crime suggests that he should be treated fairly upon his trial, and such proceedings as were here resorted to will not be tolerated or approved. Ordinarily when the court promptly sustains an objection to a question, and the facts indicate that it was asked in good faith, no error is presented unless the question is of such nature as to be extremely hurtful. Overstreet v. State, 68 Tex.Cr.R. 238, 150 S.W. 899, and cases therein cited. We frequently decline to reverse cases where improper questions were asked and objections were promptly sustained; but we can scarcely conceive a question which in and of itself could be more hurtful to an accused than one calling for an answer which would put in issue his general reputation. It places him in the unfortunate attitude of having to let the question pass unchallenged, thereby permitting the state to do what it plainly has no right to do, or of objecting thereto in the presence of the jury, leaving the very natural impression upon them that he feared an answer which would have been detrimental to him."

See also Walker v. State, 146 Tex.Cr.R. 321, 174 S.W.2d 974; Elizondo v. State, 130 Tex. Cr.R. 393, 94 S.W.2d 457; Franks v. State, 125 Tex.Cr.R. 245, 68 S.W.2d 207; Watson

v. State, 123 Tex.Cr.R. 360, 59 S.W.2d 126; Coon v. State, 117 Tex.Cr.R. 158, 35 S.W.2d 419.

We hold the action of the State injecting the issue of appellant's character into the case was harmful and reversible error.[1]

For the error cited, the judgment is reversed and the cause remanded.

ROBERTS, Judge (dissenting).

The majority reverses this conviction because the State "injected" the issue of appellant's character into the case.

As noted in the majority opinion the witness Stribling testified that she knew the appellant; that he visited in her home; that he helped her to do "anything I asked him to do;" that she had never known the appellant to beat up her daughter (the deceased) or use any force or violence on the deceased; and that she had never known the appellant "to threaten to kill her or harm" the deceased.

I would hold that these statements by the witness placed her testimony within the rule of Childs v. State, 491 S.W.2d 907, 908–909 (Tex.Cr.App.1973) where this Court unanimously held that it is the entire tenor of a witness's testimony—and not the use of "magic words"—which makes the witness a character witness. It seems clear that the witness was attempting to testify in support of the appellant's character. Certainly her testimony in support of his character was made more forceful by the fact that she was the mother of the deceased. Clearly, the State was justified in impeaching the witness by the use of "have you heard" questions. See and compare Howard v. State, 505 S.W.2d 306, 310–311 (Tex.Cr.App.1974); Hurd v. State, 513 S.W.2d 936, 945 (Tex.Cr.App.1974), and Walker v. State, 501 S.W.2d 912, 915 (Tex. Cr.App.1973).

Moreover, since the witness answered all of the questions negatively, we should apply the rule announced in Sensabaugh v. State, 426 S.W.2d 224, 227 (Tex.Cr.App.1968) and reaffirmed in Wallace v. State, 501 S.W.2d 883, 885 (Tex.Cr.App.1973). In *Sensabaugh* it was held that:

"The Court of Criminal Appeals rarely reverses a conviction of crime solely because an improper question was propounded to the defendant as a witness. To cause a reversal the question must be obviously harmful to the defendant."

In *Wallace*, we applied this rule to character witnesses. There, as in the instant case, there was nothing in the record which showed bad faith by the prosecutor in asking a "have you heard" question. We should hold, as we did in *Wallace*, that the mere asking of such questions is not sufficient to require reversal.

We should also hold that the appellant waived his right to complain of these questions. In cross-examining the witness the prosecutor developed the following testimony without objection:

"Q   And so, these questions that you have been answering for Defense Counsel, do you mean to say by your answers that Charles Els is a man of good character?

"A   Well, I think so.

---

1. While the State does not rely upon the following facts, we observe that subsequent to the above testimony the appellant, on direct examination, went into the events inquired about in the "have you heard" questions. We think it apparent that this testimony was an attempt to explain the matters improperly paraded before the jury by the State's prior inquiry, and did not waive the objection. Nicholas v. State, Tex.Cr.App., 502 S.W.2d 169, 173 et seq. See also Hurt v. State, Tex.Cr.App., 480 S.W.2d 747, 749–750. Nor can it be said that the State's cross-examination of appellant inquiring into the details surrounding these prior acts of appellant rendered the initial error harmless. Such further inquiry was certainly improper and the State does not contend otherwise.

"Q And that is what you meant when you answered those questions of De-·fense Counsel?

"A I never seen him drunk. I have saw him drink a beer, but I have never seen him drunk or anything.

"Q So, when you were answering the questions of the Defense Lawyer—and I will have them read back to you if it is necessary—*did you mean to imply that the Defendant, as far as you know, is a man of good character and reputation* ?

"A I thought so, yes, sir. *I still say so.*

"Q And *that is what you meant when you were answering this lawyer's questions* ?

"A *Yes.*

"Q Let me test your knowledge of his character and reputation." (Emphasis added)

At this point appellant objected. By allowing the witness to testify without objection that her testimony was intended to signify her endorsement of the appellant's character and reputation, the appellant waived his right to complain that the witness was not a character witness. See Mullenix v. State, 499 S.W.2d 330, 331 (Tex.Cr. App.1973); Blanco v. State, 471 S.W.2d 70, 71 (Tex.Cr.App.1971); see also Piraino v. State, 415 S.W.2d 416, 417 (Tex.Cr.App. 1967); Holtzclaw v. State, 451 S.W.2d 505, 506–507 (Tex.Cr.App.1970).

Appellant also waived any error he might now urge when he took the stand and admitted the facts of each arrest upon which a "have you heard" question was based. See Ware v. State, 467 S.W.2d 256, 259 (Tex.Cr.App.1971); Cowles v. State, 510 S.W.2d 608, 610 (Tex.Cr.App.1974). I would hold that the "have you heard" questions

were proper and would overrule appellant's last six grounds of error.[1]

Because of my disposition of these grounds of error, it seems appropriate that I discuss appellant's remaining grounds as well.

In his first ground of error, appellant contends the trial court erred in denying his motion for new trial which alleged jury misconduct. Appellant contends that jury misconduct occurred when juror Boller allegedly received other evidence during deliberations at the punishment stage of the trial. Appellant specifically argues that a statement was made in the jury room that if the jury could not agree on the punishment, the court would assess the maximum punishment. Appellant contends that juror Boller relied on this information and as a result changed his vote from ten years' probated to ten years' confinement.

Although other allegations of jury misconduct were made in appellant's motion for new trial, this particular allegation was not made therein. Furthermore, appellant filed a total of six motions for new trial over a period exceeding two months. Between his third and fourth amended motions for new trial, a period in excess of twenty days elapsed.

Article 40.05, Vernon's Ann.C.C.P., governs motions for new trial. It provides in part:

"A motion for new trial shall be filed within ten days after conviction as evidenced by the verdict of the jury, and may be amended by leave of the court at any time before it is acted upon within twenty days after it is filed. Such motion shall be presented to the court within ten days after the filing of the original or amended motion, and *shall be determined*

---

1. The majority's opinion turns on one crucially important sentence: "The State . . may not transform, by its own questions, a witness who is not a character witness into one in order to be able to ask 'have you heard' questions." *Ante,* at page 14 of the Court's opinion. This sweeping legal principle is made without the support of any legal authority whatsoever.

*by the court within twenty days after the filing of the original or amended motion,* but for good cause shown *the time for filing or amending may be extended* by the court, but shall not delay the filing of the record on appeal." (Emphasis added)

The statute is mandatory in requiring that any original or amended motion for new trial be determined within twenty days.[2] This clearly contrasts with the liberal statutory language granting the trial court wide discretion in allowing extensions of time for filing or amending such motions.

But this liberality clearly does *not* apply to the time allowed for *determining* motions for new trial. As Presiding Judge Woodley stated in St. Jules v. State, 438 S.W.2d 568, 570 (Tex.Cr.App.1969):

"The statute does not authorize an extension of the time in which a motion for new trial shall be determined."

Accord: Grimes v. State, 171 Tex.Cr.R. 298, 349 S.W.2d 598 (1961); Jones v. State, 501 S.W.2d 677, 679 (Tex.Cr.App.1973).

Clearly, the third amended motion was overruled by operation of law. Jones v. State, supra. As to the amended motions filed after the third amended motion was overruled by operation of law, it necessarily follows that they were void *ab initio*, since they comprised an attempt to amend a motion which was no longer before the court.

Moreover, it is irrelevant that the trial court subsequently conducted a hearing and considered the issue now presented for review. Jones v. State, supra.[3]

Nor does the holding in Guzman v. State, 521 S.W.2d 267 (Tex.Cr.App.1975), require a different result. In that case, we held (1) that the trial court could in its discretion

add materials to the record after the record had been approved, and (2) that the court should then make a supplemental approval of the record.

The construction of Guzman v. State, supra, should not be so broad as to extend to the situation at bar; instead, it should be narrowly construed and limited to the facts there presented. The holding in Guzman v. State, supra, allows the trial judge limited discretion in supplementally approving the record. Such a procedure was permitted where there was no express statutory proscription. See Art. 40.09, V.A.C.C.P. However, in regard to motions for new trial, Art. 40.05, V.A.C.C.P., is explicit in providing that it "shall be determined by the court within twenty days after the filing of the original or amended motion." As noted earlier, this had long been interpreted to mean that the motion for new trial is overruled by operation of law when not acted upon within twenty days. E. g., Jones v. State, supra, and cases there cited.

The underlying rationale in maintaining a definite time period for motions for new trial as distinguished from a supplemental approval of the record in the discretion of the trial judge is that motions for new trial are primarily directed to producing evidence that has not been developed in the trial court. This is evidenced in the special commentary following Art. 40.09, V.A.C.C.P., by now Presiding Judge Onion:

"It has been suggested that this procedure [the trial court's granting a new trial after reviewing the briefs, Art. 40.09(12)] eliminates the necessity for motions for new trial, but if motions for new trial had not been retained there would have been no hearing to produce and preserve testimony as to jury misconduct, newly discovered evidence, etc."

---

2. Accordingly, we have frequently held that where such motions are not acted upon or amended within that twenty day period, they are overruled by operation of law. E. g., Chappell v. State, 519 S.W.2d 452, 453 (Tex.Cr.App.1974).

3. To the extent that it is inconsistent with this opinion and the cases cited, the holding in Atkinson v. State, 164 Tex.Cr.R. 421, 299 S.W.2d 951 (1957), should be overruled.

This being so, it follows that a reasonable yet definite time period must be established and maintained in order to conclude the evidence and begin the appellate process. It is, indeed, an unwarranted conclusion to say that because the trial judge, in his discretion, can re-open the record and include matters which were incorporated by reference at trial, that the trial judge, in his discretion, could do that which the statute expressly denies him the authority to do, i. e., have a hearing on an amended motion for new trial after the motion is overruled by operation of law.

The situation involved in the case at bar and the one in Guzman v. State, supra, are completely distinguishable. Our holding in Guzman v. State, supra, should not be read to include late-held hearings for motions for new trial.

Appellant's first ground of error should be overruled.

Appellant next challenges the admission into evidence of a photograph of the deceased. This issue is foreclosed by our discussion in Martin v. State, 475 S.W.2d 265, 267–268 (Tex.Cr.App.1972). See also Tezeno v. State, 484 S.W.2d 374, 384–385 (Tex.Cr.App.1972). Nor is it of significance that the photograph was colored rather than black-and-white. Terry v. State, 491 S.W.2d 161, 163 (Tex.Cr.App.1973). No error is shown.

Appellant's third ground alleges that the evidence is insufficient to show malice.

The record reflects that Houston Police Officer R. O. Olive went to appellant's house on the date in question in response to a call; he first encountered the appellant, who stated that the deceased, Oleta Johnson, had shot herself. Inside, Officer Olive found the body of the deceased lying on a bed.

The inculpatory portion of a voluntary statement of the appellant was introduced in evidence by the State. In it appellant admitted shooting the deceased, who was his girlfriend, after drinking and arguing with her.

The appellant took the stand and contended that the shooting was an accident. He stated that he thought the hammer would land on an empty cylinder and make a clicking sound which would frighten the deceased. He added that he did not aim at the deceased, but that she moved suddenly just as he fired. The appellant's attorney then read to the jury the exculpatory parts of the appellant's statements, which agreed with this version of the incident.

The appellant also stated generally that he had never threatened or beaten the deceased, and specifically that he had never threatened the life of the deceased. The testimony of several of the appellant's witnesses also tended to show a lack of threats and physical intimidation by the appellant.

In rebuttal, the State called on Denard Campbell, who testified that the appellant had threatened to kill the deceased. He also testified that prior to her death the deceased had shown him bruises on her leg and arms which she said were the result of being beaten up by her boyfriend, Charles. The appellant took the stand and disputed the truth of these statements.

The jury has exclusive authority to judge the credibility of the witnesses and the weight to be given their testimony. Here, there was sufficient evidence to support their verdict. Compare Washington v. State, 484 S.W.2d 721, 723 (Tex.Cr.App. 1972). I would overrule appellant's third ground as well.

The judgment should be affirmed.

DOUGLAS, Judge (dissenting).

I join in that part of the dissenting opinion by Judge Roberts which would hold that no reversible error is shown by the asking of the "have you heard" questions.